NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANISLAV ROYZENSHTEYN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ONYX ENTERPRISES CANADA, INC., *et al.*,<br><br>Defendants. | Civil Action No. 22-07514 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Canaccord Genuity LLC (Canaccord)'s Motion for Reconsideration of the Court's June 12, 2025 Order denying its Motion to Dismiss the First Amended Complaint (FAC). (ECF Nos. 139, 171, 227, 233.) Plaintiffs Stanislav Royzenshteyn and Roman Gerashenko opposed. (ECF No. 249.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Canaccord's Motion for Reconsideration is **DENIED**.

**I.    BACKGROUND**

The Court recounts only the facts and procedural history required to resolve the present dispute.[1] The premise of this action is that Plaintiffs were harmed following a 2020 merger

---

[1] For a detailed recitation of the factual and procedural background, see the Court's previous Opinions at ECF Nos. 118 and 228.

between a special purpose acquisition company (SPAC) and Onyx Enterprises International Corp. (Onyx), a company founded by Plaintiffs.

Plaintiffs allege Canaccord aided and abetted Defendants' (Prashant Pathak, Carey Kurtin, and Onyx Enterprises Canada, Inc. (OEC)) breach of fiduciary duty to Plaintiffs. (ECF No. 139 ¶¶ 275-282). They allege that Pathak, Kurtin, and OEC "owed the utmost fiduciary duties of care and loyalty, which comprise an obligation to act in good faith, with candor, and to make accurate material disclosures to Onyx's shareholders." (*Id.* ¶ 276.) Plaintiffs claim that Canaccord, a financial advisor to the 2020 merger, aided and abetted the Defendants in their breach of fiduciary duties in the following ways:

- [C]ommunicating to [the SPAC] that the Liquidation Preference was of central importance to the . . . Defendants;[2]

- [W]orking exclusively to ensure the successful consummation of a deal, rather than maximizing deal consideration and protective provisions in the Business Combination Agreement;

- [K]nowingly and substantially assist[ing] and participat[ing] in the . . . Defendants' use of unrealistic valuations of Onyx in order to support the transaction;

- [N]egotiating with [the SPAC] in a way that encouraged [the SPAC] to offer an artificially low deal price for Onyx, which did not reflect the fair value of Onyx but instead was designed to facilitate the consummation of [a transaction] such that OEC could receive the Liquidation Preference and Canaccord could realize a "success fee" under the engagement letter.

---

[2]   The Court described the Liquidation Preference—a contractual provision arising out of a 2015 $5 million investment by OEC in Onyx—in its Opinion on the initial Motion to Dismiss. (*See* ECF No. 118 at 3-4 ("The Amended Certificate of Incorporation . . . provides that if a merger involving Onyx resulted in its stockholders losing a majority of the voting power in substantially the same [p]roportions as they held before the merger, OEC would be entitled to the Liquidation Preference: the sum of (i) four times the Original Issue Price—that is, four times OEC's $5 million investment, or $20 million—plus (ii) any accrued but unpaid Accruing Dividends.") (internal quotation marks and citations omitted).)

(ECF No. 139 ¶¶ 279-281.)

Canaccord challenged the pleading sufficiency of Plaintiffs' aiding and abetting claim. (ECF No. 171.)  The Court determined that, viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs' aiding and abetting claim was plausibly pled and allowed the claim—along with the other claims in the FAC—to proceed to discovery. (Tr. 21:17-20).[3] The Court, however, struck certain allegations contained within paragraphs 155, 194-209, 211-212, 214 and 224-225 of the FAC because they concerned derivative claims rather than direct claims, and Plaintiffs failed to comply with Rule 23.1's pleading requirements for derivative claims. (*Id.* at 15:1-6; ECF No. 227 at 2.)

On June 26, 2025, Canaccord filed a Motion for Reconsideration. (ECF No. 233.) Plaintiffs opposed. (ECF No. 249.)[4] Canaccord raises three arguments in support of its Motion for Reconsideration.  First, Canaccord argues that there are no remaining direct harms alleged against Canaccord, so it must be dismissed from this action. (ECF No. 233-1 at 12-16.)  Second, Canaccord submits that this Court overlooked controlling caselaw regarding damages and causation.  (*Id.* at 16-17.)   Third, Canaccord contends that this Court overlooked controlling caselaw as to why Plaintiffs are bound by the Engagement Letter between Canaccord and Onyx,

---

[3] "Tr." refers to the transcript of the oral Opinion on the Motions to Dismiss the FAC, available at ECF No. 228.  This Opinion cites the internal page numbers of the transcript when referring to the oral Opinion.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4] Canaccord requested leave to file a reply brief.  (ECF No. 252.)  The Court rejected that request because the "letter [requesting leave] provides a detailed summary of [Canaccord's] arguments." (ECF No. 252.)  Plaintiffs filed a response to a new argument included in Canaccord's letter. (ECF No. 255.)  The Court has considered Canaccord's letter and Plaintiffs' response in deciding this Motion.

thus requiring that the claims against Canaccord be transferred to the Southern District of New York. (*Id.* at 17-18.) The Court finds each of these arguments to be without merit.

## II.    LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not expressly authorize motions for reconsideration, this District's local civil rules permit such motions if the movant (1) files its motion "within 14 days after the entry" of the challenged order and (2) sets "forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i).  Motions for reconsideration are "extremely limited procedural vehicle(s)" that are to be granted "very sparingly." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013) (citations and quotation marks omitted).  Such motions may be granted only if the moving party shows "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citations and emphasis omitted).  They are "not a vehicle for a litigant to raise new arguments or present evidence that could have been raised prior to the initial judgment." *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 168 (D.N.J. 2013). And it is improper to "ask the court to rethink what it ha[s] already thought through—rightly or wrongly." *Lynch v. Tropicana Prods., Inc.*, Civ. No. 11-07382, 2013 WL 4804528, at *1 (D.N.J. Sept. 9, 2013) (quoting *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990)).

### III.   DISCUSSION

#### A.   Direct Versus Derivative Harms

Canaccord argues the only harms that resulted following its alleged aiding and abetting were ones that were stricken as derivative in this Court's June 12, 2025 Order. (ECF No. 233-1 at 12-16.) Thus, according to Canaccord, this Court's Order left an "[i]nternal [i]nconsistency" when it denied Canaccord's Motion to Dismiss: when the Court struck allegations premised on derivative harms, it struck all those that pertained to Canaccord, and, as such, no remaining allegations supported Plaintiffs' aiding and abetting claim against Canaccord. (*Id.* at 4, 12.)[5]  The Court disagrees.

As an initial matter, this Court has already explained that litigants "cannot use a motion for reconsideration to get a second bite at the apple." (ECF No. 206 at 5-6 (citing *Sussman v. Cap. One, N.A.*, Civ. No. 13-6483, 2015 WL 164095, at *4 (D.N.J. Jan. 13, 2015).)  And this Court has already stated three times that Plaintiffs have alleged direct harms with respect to each of the claims. (*See* ECF No. 118 at 34 ("Plaintiffs' claims all arise at least in part from harm that is direct under both New Jersey and Delaware law."); ECF No. 206 at 7 ("[T]he Court already provided examples of the direct and derivative allegations . . . ."); Tr. 14:5-10 ("This Court has already ruled once on the nature of Plaintiffs' claims . . . and [held] that [P]laintiffs have standing to pursue their direct claims").)

Nonetheless, for the sake of clarity, the Court will explain by way of example why Plaintiffs may still pursue their aiding and abetting claim against Canaccord despite this Court's

---

[5]   As this Court previously noted, "[t]he law of New Jersey and Delaware both treat the decision whether a suit is direct or derivative as a threshold standing issue." (ECF No. 118 at 27 n.21 (citations omitted).)

June 12, 2025 Order striking certain allegations contained in paragraphs 155, 194-209, 211-212, 214 and 224-225 of the FAC.  (ECF No. 227 at 2.)

In this Court's Opinion on the initial Motion to Dismiss, the Court found the allegation that "'Plaintiffs were deprived of their contractual right to vote on the merger when the Controller Defendants unlawfully invoked the Drag-Along provision' of the Stockholders Agreement" was not premised on a derivative harm.  (ECF No. 118 at 30-31 (quoting ECF No. 96 at 35).)  The Court reasoned that "the complete loss of [Plaintiffs'] voting rights" was a direct harm.  (*Id.* at 31 (citing *In re Activision Blizzard, Inc. S'holder Litig.*, 124 A.3d 1025, 1049-50 (Del. Ch. 2015) ("Classic examples [of direct claims] included the right to vote, the right to compel payment of a contractually specified dividend, and the right to own and alienate shares")).)

To the extent the Opinion did not explicitly tie this or other types of direct harms to the breach of fiduciary duty—and by consequence the aiding and abetting the breach of fiduciary duty—claim, the Court will make that connection explicit now.  Plaintiffs allege that Pathak, Kurtin, and OEC "breached their fiduciary duties by negotiating and approving a sham transaction to 'drag along' the minority shareholders, Plaintiffs, into a [m]erger that they were against, strip them of their roles as directors freezing them out of the business, and prevent them from being able to sell or cash-out their shares."  (ECF No. 139 ¶¶ 260, 271.)  And Plaintiffs allege that Canaccord "knowingly participated in, and provided substantial assistance to" Defendants by "working exclusively to ensure the successful consummation of" that merger.  (*Id.* ¶ 279.)  In other words, drawing inferences in favor of Plaintiffs as the Court must, Plaintiffs allege that Canaccord substantially assisted Defendants in executing a conflicted transaction that eliminated Plaintiffs' voting rights, removed Plaintiffs as directors, and prevented Plaintiffs from alienating their shares.  These are direct harms stemming from an alleged breach of fiduciary duty.  *See In re Activision*

*Blizzard*, 124 A.3d at 1049-50.[6]  Therefore, based on this example alone, Plaintiffs may pursue their aiding and abetting claim against Canaccord.

### B.     Causation and Damages

Canaccord next argues that "[t]he Court overlooked controlling law regarding damages and causation." (ECF No. 233-1 at 16.)  As an initial matter, the Court does not overlook a case simply because it does not cite it.  *See Byrne v. Calastro*, Civ. No. 05-68, 2006 WL 2506722, at *2 (D.N.J. Aug. 28, 2006) ("An argument is not deemed overlooked because it is not specifically addressed in a court's opinion.").  More fatally, however, the only decision within the Third Circuit cited in this section of Canaccord's brief—in other words the only decision this Court apparently overlooked—is to the district court decision *Laven v. Flanagan*, 695 F. Supp. 800, 810 (D.N.J. 1988).  (*See* ECF No. 233-1 at 16-17.)  It is axiomatic, however, that "[a] decision of a federal district court judge is not binding precedent . . . ."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation marks and citation omitted); *see also Owens v. City of Atlantic City*, Civ. No. 05-3132, 2008 WL 4205797, at *4 (D.N.J. Sept. 8, 2008) ("A court's failure to consider another district court's decision on a similar issue is not a sufficient basis for reconsideration, as the other court's opinion is not a 'controlling decision.'").

---

[6]  Canaccord argues the Court struck the allegation that Plaintiffs were removed from the Board of Directors because that allegation concerned a derivative claim. (ECF No. 233-1 at 15.) Canaccord is incorrect.  The Court struck "allegations *contained* in Paragraph[] . . . 212" but it did not strike the entire Paragraph. (ECF No. 227 at 2 (emphasis added).)  Indeed, the Court carved out the allegation concerning removal from the Board of Directors. (*Compare* ECF No. 139 ¶ 212 (alleging "[f]or the [Plaintiffs], the outcome of the [m]erger was as follows: (i) they lost their 48% equity interest in Onyx; (ii) they received $0.00 in cash; (iii) they received approximately 36% of restricted stock in PARTS iD (around 75% of their initial equity stake); and (iv) **they lost their director seats on the Board**") (emphasis added), *with* ECF No. 227 at 2 (striking allegations from Paragraph 212 that "Plaintiffs' ownership stake was diluted from 48% to less than 37%, they received no cash from the merger, and they received 'approximately 36% of restricted stock in PARTS iD (around 75% of their initial equity stake)'").)

7

Canaccord, for the first time in its letter requesting leave to file a reply brief, concedes that *Laven* is not controlling but contends *Laven*'s "uncontroversial holding has been echoed by the Third Circuit." (ECF No. 252 at 2-3 (citing *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006).) Canaccord has never cited *Berckeley* in its previous briefing. (*See generally* ECF Nos. 172, 191.) But Local Rule 7.1(i) "explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked *by counsel*." *In re Coinbase Glob., Inc. Sec. Litig.*, Civ. No. 22-04915, 2025 WL 1040633, at *4 (D.N.J. Apr. 8, 2025) (emphasis added) (internal quotation marks and citation omitted). And even if Canaccord's invocation of *Berckeley* were proper, the decision is not "controlling" in this matter because it concerned the causation standard for a Securities Exchange Act of 1934, § 10(b) violation at the summary judgment stage and did not set forth a damages standard. *See Berckeley*, 455 F.3d at 222-25. As this Court has already stated, "[i]t may be that discovery will better determine the viability of Plaintiffs' . . . aiding and abetting claim[]," (Tr. 21:14-16), and "causation is generally a question of fact, not suitable for resolution on a motion to dismiss," (Tr. 11:3-6 (quoting *LY Berditchev, Corp. v. Truss Cosms. Corp.*, Civ. No. 22-04242, 2023 WL 334539, at *10 (D.N.J. Jan. 20, 2023)).) Because Canaccord has failed to present overlooked authority on causation and damages that binds this Court in the context of a motion to dismiss fiduciary duty claims, the Court finds this argument unpersuasive.

### C.     The Engagement Letter

Canaccord's final argument is that this Court "overlooked controlling law as to why Plaintiffs are bound by the Engagement Letter." (ECF No. 233-1 at 18.) Canaccord argues the claim against it should be dismissed or transferred due to the forum selection and choice of law

clauses that, Canaccord contends, bind Plaintiffs. (*Id.* at 17.) The Court disagrees for similar reasons that it rejects Canaccord's other arguments.

First, the Court has already addressed this argument. In its Opinion on the second Motion to Dismiss, this Court analyzed and rejected the Engagement Letter claims. The Court explained that even though Plaintiffs are not parties to the Engagement Letter between Canaccord and Onyx, they still may be bound by it "if they are closely related to the agreement in such a way that it would be foreseeable that they would be bound." (Tr. 16:9-12 (citing *Carlyle Inv. Mgmt. LLC v. Monmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)).) The Court noted that the "closely related" exception is a narrow one and followed Third Circuit precedent in analyzing "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties[,] and whether the non-signatory received a direct benefit from the agreement." (Tr. 16:12-13, 22-24 (quoting *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018)).) The Court then addressed these factors, finding the first and third favored a "close relationship" and the second and fourth cutting against such a finding. (Tr. 17:7-19:23.) Based on the totality of the circumstances, the Court found Plaintiffs were not bound under the "closely related" exception. (Tr. 19:24-20:3.)

Second, Canaccord's sole argument is that "controlling law" dictates that Plaintiffs are bound by the Engagement Letter because "Plaintiffs stood in the shoes of Onyx . . . by bringing derivative claims against" Canaccord. (ECF No. 233-1 at 18 (citing ECF No. 172 at 29-31).) First, as discussed in this Opinion, this Court has already struck the derivative claims, so this argument fails on its face. Second, in support of this argument, Canaccord again presents the Court with a district court—that is, non-controlling—decision that was before the Court at the time of its original decision, and the decision is in any event inapposite because it concerns whether a non-

signatory is bound in the context of derivative, not direct, claims. (*See* ECF No. 233-1 at 17-18 (citing *PNY Techs., Inc. v. Miller, Kaplan, Arase & Co., LLP*, Civ. No. 14-4150, 2015 WL 1399199, at *8 (D.N.J. Mar. 24, 2015)); ECF No. 172 at 30-31 (citing the same).) Canaccord has failed to present the Court with any overlooked controlling decisions mandating that Plaintiffs are bound by the Engagement Letter, so the Court rejects this argument.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Canaccord's Motion for Reconsideration (ECF No. 233) is **DENIED**. An appropriate Order follows.

Dated: January 13, 2026

	*[signature]*
	_____
	GEORGETTE CASTNER
	UNITED STATES DISTRICT JUDGE