UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANISLAV ROYZENSHTEYN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ONYX ENTERPRISES CANADA INC., *et al.*,<br><br>Defendants. | Civ. No. 22-7514 (GC)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court is a discovery dispute regarding a single email chain and its attachment, which defendants Onyx Enterprises Canada Inc., Prashant Pathak, Carey Kurtin, and In Colour Capital Inc. (collectively, the "OEC defendants") have withheld in discovery pursuant to the work product doctrine. Plaintiffs challenge the designation, arguing that the materials do not qualify for work-product protection. For the reasons set forth below, the Court agrees with plaintiffs and will direct the OEC defendants to produce the disputed materials in their entirety.

*

The Court assumes the parties' familiarity with this case and proceeds directly to the dispute. On their privilege log in connection with jurisdictional discovery, the OEC defendants identified an email chain from December 10, 2020, and an attachment to one of the emails. The original email was sent by an accountant at PricewaterhouseCoopers LLP ("PWC") to defendant Carey Kurtin and bore the subject line "Onyx Dividend Options." The PWC accountant attached a

document bearing the file name "Cash Modeling – In Colour Group – Sale of Onyx US." Carey Kurtin forwarded the email and the attachment to his father, defendant William Kurtin. According to a declaration executed by the Kurtins' tax counsel, Jack Bernstein, Esq., the information that PWC provided in the attachment had been collected for the purpose of facilitating Bernstein's legal advice to the Kurtins regarding the possible tax implications of the merger transaction that is at the center of this lawsuit. *See* [Dkt. 325-2] ("Bernstein Decl.") ¶¶ 4-5.

Plaintiffs objected to the OEC defendants' designation of the documents as shielded from discovery and a dispute ensued. The parties filed an initial joint letter summarizing the dispute on August 7, 2026, [Dkt. 305], and the Court discussed the dispute with the parties during a video status conference held on September 14, 2026. The Court directed the parties to continue to meet and confer further on that issue (and others), but they could not resolve this dispute. Another letter followed on October 6, 2026 from plaintiffs, [Dkt. 325], and the Court again discussed the dispute with the parties during a video status conference held on October 7, 2026. During that conference, the Court directed the OEC defendants to submit the disputed materials for the Court's *in camera* review, and to file a letter responding to plaintiffs' letter. The OEC defendants did so, [Dkt. 330], and the Court has considered the parties' correspondence and has reviewed the disputed materials *in camera*.

*

The bases on which the OEC defendants have withheld the disputed materials have shifted over time. The OEC defendants first invoked a privilege under Canadian law, on the theory that information provided by accountants related to legal advice qualifies for the solicitor-client privilege. The OEC defendants then changed course, asserting that the materials are instead privileged under New Jersey's attorney-client privilege. Thereafter, the OEC defendants withdrew their invocation of the attorney-client privilege altogether, landing instead on the work product doctrine. The OEC defendants now invoke the work product doctrine—and only the work product doctrine—to shield the materials from discovery. The Court therefore confines its analysis to the work product doctrine and offers no view whether the materials qualify for the attorney-client (or any other) privilege.

*

The work product doctrine derives from the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

At issue in this dispute is the requirement that the materials in question be prepared "in anticipation of litigation." The analysis is context-specific, and asks whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993) (quoting *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990)). To answer that central question, the Court first must determine whether the preparing party actually—and objectively reasonably—anticipated litigation. *Id.* at 1260. If it did, the Court then must determine whether the materials at issue were prepared because of the anticipated litigation, or instead whether they were "assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Id.* (quoting Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment). If the materials fall into the latter category, they are not protected: "Work product prepared in the ordinary course of business is not immune from discovery." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000); *accord Rockwell*, 897 F.2d at 1265-66. Although "[l]itigation need not be imminent" and the invoking party need not intend affirmatively to use or introduce the document in the litigation, the work product doctrine requires the invoking party to show that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Rockwell*, 897 F.2d at 1266 (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542-43 (5th Cir. 1982)).

In short, the proponent must establish a purpose-based connection between the preparation of the materials at issue and the prospect of litigation.

The "party claiming work-product immunity bears the burden of showing that the materials in question were prepared in the course of preparation for possible litigation." *Holmes*, 213 F.3d at 138 (internal quotation marks omitted).

*

Applying these standards, the Court rejects the OEC defendants' claim of work-product protection over the disputed materials. Although the OEC defendants have shown that litigation regarding the merger was reasonably anticipated when the disputed materials were prepared, the OEC defendants have not met their burden of demonstrating that the materials were prepared because of that or any other litigation. On this record, the Court concludes that the OEC defendants have not shown that "the primary motivating purpose behind the creation of the [disputed] document[s] was to aid in possible future litigation." *Rockwell*, 897 F.2d at 1266 (quoting *El Paso*, 682 F.2d at 542-43).

The Court accepts Bernstein's declaration explaining that the information in the materials had been collected and conveyed at his request for the purpose of providing legal advice to the Kurtins regarding the tax implications of the merger at issue in this case. *See* Bernstein Decl. ¶ 5.[1] The Court also agrees that, at the time

[1] The Court again notes that because the OEC defendants have withdrawn their assertion of the attorney-client privilege, the Court does not consider whether information collected and conveyed by an accountant for the purpose of facilitating legal advice qualifies for that separate privilege.

PWC assembled and conveyed the information in the materials to the Kurtins, litigation concerning the merger was actually and reasonably anticipated; indeed, plaintiffs at that time had already sought to block the merger in court. *See id.* ¶ 4.

Neither counsel's declaration nor the materials themselves, however, indicate that the materials were created for any purpose other than to analyze the tax and accounting implications of the merger in the ordinary course, and to provide the Kurtins potential tax and accounting options for proceeding. Counsel's declaration explains that his representation "included legal advice regarding the possible tax implications associated with the contemplated business transaction based on, for example, how the transaction was structured and the amounts and types of payments that would be generated as a result of the business transaction—all in the context of the applicable laws governing taxation." *Id.* ¶ 5. Counsel continues, explaining that he "instructed [the Kurtins] to gather certain financial information from their tax professionals so that [he] could consider that information in providing advice as to the tax implications, both before and after the transaction closed." *Id.*

Counsel and the OEC defendants do not explain, however, how the purposes behind that ordinary tax advice included aiding the Kurtins in any eventual litigation. The explanations establish why Bernstein needed the information to evaluate the merger's tax consequences, but not why the information was requested or collected to prepare for or assist with litigation concerning the transaction. Indeed, the OEC defendants do not identify a single litigation-related reason for requesting, collecting, assembling, or conveying the information in the disputed

materials; the OEC defendants identify only the separate purpose of evaluating the transaction's tax and accounting consequences.[2] The Court's *in camera* review of the disputed materials themselves likewise corroborates the tax-planning purpose described in Bernstein's declaration rather than a litigation-aiding purpose that would qualify the materials for protection under the work product doctrine.[3]

Tax and accounting advice concerning the ramifications of a complex transaction like the one at issue here is reasonable and expected in the ordinary course. Here, the OEC defendants have not explained or shown how the information in the disputed materials would, or was intended to, aid the Kurtins in litigation. Instead, the record strongly suggests that the information would have been collected and the analysis performed in the ordinary course, irrespective of any litigation. That the merger *happened also to be* the subject of anticipated litigation does not alone accord work-product protection to materials addressing the accounting treatment of the merger. "[T]he mere fact that litigation does eventually

---

[2] To be clear, the OEC defendants need not establish that the Kurtins intended actually to use or introduce the materials in litigation. The inquiry instead concerns whether aiding the Kurtins in litigation was the primary motivating purpose behind the preparation of the materials.

[3] The OEC defendants observe that materials need not have been prepared for the specific litigation in which the materials are sought. *See* [Dkt. 330] at 3; *In re Ford Motor Co.*, 110 F.3d 954, 967 (3d Cir. 1997), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *JNL Mgmt. LLC v. Hackensack Univ. Med. Ctr.*, Civ. No. 18-5221 (SCM), 2019 WL 2315390, at *10 (D.N.J. May 31, 2019). That observation, while correct, misses the point. The principle that the OEC defendants invoke concerns the identity of the litigation, not the purpose of preparation. The deficiency here is not the OEC defendants' failure to connect the purpose behind the disputed materials to this case. Rather, it is the OEC defendants' failure to show that the disputed materials were prepared for the purpose of aiding *some* litigation.

occur, does not by itself bring documents within the ambit of the work-product doctrine." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 97 (D.N.J. 1990).

For these reasons, the Court concludes that the materials in dispute were not compiled for the primary purpose of aiding litigation. Accordingly, the OEC defendants cannot shield the materials under the work product doctrine. *See, e.g.*, *In re Rutter's Data Sec. Breach Litig.*, Civ. No. 20-382 (KM), 2021 WL 3733137, at *2-3 (M.D. Pa. July 22, 2021) (denying work-product protection to an incident report that would have been prepared regardless whether lawsuits were filed, concluding in that context that "it cannot be said that the 'primary motivating factor' behind the creation of the [report] was to aid in identifiable or impending litigation" (quoting *Rockwell*, 897 F.2d at 1266)); *United States v. Microsoft Corp.*, Civ. No. 15-102 (RSM), 2020 WL 263577, at *3 (W.D. Wash. Jan. 17, 2020) (rejecting work-product protection to accounting firm's tax analysis of transactions later challenged by the IRS, explaining that Microsoft, having "decid[ed] to pursue these complex transactions, certainly would have considered the tax consequences of the transactions and whether they complied with applicable tax provisions," regardless whether they were later challenged in court).[4]

---

[4] The Court does not hold that tax-planning and accounting materials can never qualify for work-product protection. Those kinds of materials could qualify, in appropriate circumstances, where the invoking party establishes that the primary motivating purpose behind their preparation was to aid litigation. The Court's decision here rests on the OEC defendants' failure to make that showing on this record.

*

The Court has considered the parties' arguments and applicable law and has reviewed *in camera* each communication in the email chain, as well as the attachment to the chain. With the benefit of that review, the Court concludes that the OEC defendants have not shown that the materials were generated, prepared, or collected for the primary purpose of aiding litigation. The Court therefore rejects the OEC defendants' assertion of the work product doctrine. Because the OEC defendants assert no other privilege over the disputed materials, they are directed to produce the email chain and the attachment in their entirety no later than **October 19, 2026**.

**IT IS SO ORDERED** this **15th** day of **October**, **2026**,

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE